Thank you, Your Honor. May I please support Anne McClintock on behalf of the Federal Defender's Office and Mr. Anderson, who is here in court? The real two questions in this case have to do with whether Mr. Anderson got proper notice of the restitution amount, and it's clear that he did not, and whether the government proved the restitution amount by any reliable admitted evidence, and it's clear that they did not. There's two factual assertions that one's kind of implied and one is explicitly stated in the government's brief that I want to correct. First, it is simply false for the government to assert, as it does repeatedly in their briefing, that Mr. Anderson did not object to the restitution amount. I count at least six different times in the excerpt of record, both during the initial sentencing proceeding and then in the continued sentencing proceeding, where he objected and explained the memo was unreliable, it was inconsistent, that it overestimated the amount of time. Ms. McClintock, may I ask you just one question, assuming you're right in everything? Correct. Judge Carlton based his decision on harmlessness of the error in that, to that point, there was no indication that any challenge to the $1,700 amount could be made, would be made, or would prevail. That, to me, is the only issue here. So if that's true, to this day, there's been no ‑‑ there's nothing to suggest that it would be different. That leads to the other thing that I think is false in what the government's arguing. They're arguing that ‑‑ and this is what Judge Carlton, if you read his, the oral discussion, the oral argument in his case, where he was convinced of harmless error was when the government pointed out, relying on Gamma Tech, that since ‑‑ basically implying that since Mr. Anderson was advised that the $5,000 was fine, an amount much greater than the penalty that was actually assessed between the two. That's not ‑‑ I mean, my question is real, real specific. I'm not talking about who did what or said anything. I'm just asking, right now, today, is there anything that would cause anybody to suspect? Absolutely. Where I see clear error in both what ‑‑ No. Let me just finish my question, and maybe you'll be clear. To this day, is there anything that would cause anybody reason to suspect that a challenge with notice now, with an opportunity to be heard, would produce any information that the $1,700 isn't a correct figure? Yes. What's that? First, the memorandum itself is internally inconsistent. That was a point that Mr. Anderson pointed out. At one point, they're talking about ‑‑ He's already pointed that out now. So he pointed that out to the court. Well, with the court, essentially what the magistrate judge was just delegated to the Forest Service to designate the amount of restitution. Mr. Anderson didn't have an opportunity to cross-examine them. There was no witness. There's no reliability. He challenged the reliability. It's akin in a felony case to just relying on a contested pre-sentence report without any evidentiary development or even any questioning of the probation officer or the source of information for the probation officer. There's ample case law, and I think Crawford's one of them, that ‑‑ Okay. Your answer, I take it, is no, there's no reason to believe that any other specific figure would be okay. Absolutely not. But he needs a chance to show that there were inconsistencies in the figure that was adduced. I mean, is that the bottom line? No. On the record of Forrest, Mr. Anderson asserted that it took him two hours to do the work that he did. He asserted that it would take him a day by one person to do the work. And that's all in the record as it exists. My question is, we know what the magistrate judge did on the record as it existed. Judge Carlton's view was, we know what he did. And to this day, there's nothing to suggest that he's going to do anything any different, because ‑‑ The fact that a judge makes a decision without going through the proper process, without taking evidence, doesn't mean that it is ‑‑ So that's your answer is what I'm saying. You don't disagree with me. What you're saying is ‑‑ I do disagree with you in the sense we're missing each other. Obviously, ship's passing. Sure. But the evidence, there is no reliable evidence to support the Forrest Service argument, the amount of money that Judge Hollows adopted. It's a totally different deal than you're asking us on the basis of the record, never mind an opportunity to be heard on it, to reverse. There is evidence outside the record. We have photographs of what the site looked like. There is evidence that Mr. Anderson can probably talk to his friend, the contractor, landscaper, and come up with a different estimate of how much it would cost to fill in the hole and do all the things that the Forrest Service says needs to be done. Okay. So you're saying if he's given a shot, he can put on some evidence that would show that that figure is wrong. Yes. Okay. That's my only question. Okay. I'm sorry. And you understand that. I have another question. Have you all given any thought to mediating this dispute? I've thought about it, but I got this case relatively late, so I wasn't in a position to know enough about the facts until the end of last week to know what the situation was. But now that you know more about the facts, are you in any position to say that that's a fruitful prospect? I don't know what the government's position is. I know. What about yours? I don't know what Mr. Anderson's position is. Okay. I know that he is able to pay the fine, that he has the money for that, and that we're going to get that paid this afternoon when we get back to Sacramento, assuming the clerk's office here doesn't want to take the money. The restitution amount, you know, I have no idea what the government's position is. The only other point that I would make about the restitution amount from a legal point of view... You know, this isn't... Go ahead. Go ahead. Before I leave the mediation, you understand that if you win here, he could end up paying more. Well, I don't... There's a very real risk on rehearing that the government's going to come up with a new estimate of now what needs to be done in terms of restitution, and the court is perfectly capable of adopting a much higher number. I wouldn't be surprised if the restitution amount on remand, if you win, turned out to be higher. You understand that risk. I understand that risk, but I don't think as a legal matter that that's not appropriate. Under rule... I'm talking about mediation. I... You say it's not appropriate, but I mean... Well, you know... Go ahead. The question to you was are you willing to consider mediation. Your answer is I don't know. And my question to you is do you and your client understand the risk that even if you win, you may end up paying more on remand? I think he's heard it now. Okay. As an appellate court, however, in a traditional review of a case, one of the fundamental problems with what happened here, and it is one of the things that I wanted to originally make a point about, which is false in the government's statement of its facts. One of the key things that it argued in its harmless error analysis, and which Judge Carlton was convinced of, is that because Mr. Anderson was warned of the $5,000 fine amount, there's no harm to him for not having gotten earlier notice. And in fact, the $5,000 fine, you know, I couldn't find anything in the existing transcript that explained, that showed that that actually happened. I did listen to, late last week, when I found that we had ordered the disk of the initial appearance. And at the initial appearance, he was warned of $5,000. So I have no problem with that aspect of it. What I have a problem with, and what I think is fundamentally wrong with what happened to Mr. Anderson, is that the government at that hearing asked for, when asked by the judge, what are you seeking? They said $250, that's it. As a result, Judge Hollows never gave him any, Mr. Anderson, that is, any advisement that he was facing a restitution amount of any kind. So there's a clear violation. This goes back to the due process argument we were arguing about before, but also under Rule 58, that he was supposed to be told at the very beginning, so that he could make his rational, reasonable decisions about whether to plead, whether to come to some mediation, whether to come to some compromise of what he was facing. The most he heard in November 2004 is $750, and it wasn't until after he was convicted and with no notice that they came up with $1,790 and the judge adopted, without any reliable evidence or fact-finding, the $1,700 amount. Unless there's other questions, I reserve the remainder of my time for rebuttal. Thank you, counsel. I'm Samantha Spangler, assistant United States attorney, and I've been with this case since the beginning. I was in court the day of the court trial, which was put on by a Rule 180 prosecutor, which is the law enforcement agent who was serving as the government prosecutor. And I was not there, however, at the February 16th date when Mr. Anderson came back to court to prove to attempt to prove his inability to pay. The court asked a question, Judge Reimer, about whether we would go forward with mediation. I'm afraid that even though I've been with the Federal court and the U.S. Attorney's Office for 17 years now, I'm not familiar with mediation in a criminal case. I would be willing to explore that option, however, if I can learn more about it. This is more ñ is in any event far more like a civil case at this point. That's ñ I recognize that, Your Honor. I am ñ We've actually successfully mediated the death penalty case, so it's not unheard of. Okay. I am familiar with, in the district court, certain matters when there's a breakdown in plea negotiations between the government and the defendant, where a matter has been referred to another judge to serve as a settlement judge, and the government would be willing to do that. But I think you're right, that if this court reverses the sentence and remands for reconsideration of that amount, that it could result in a greater restitution. I mean, that's what I think. Sure. And your risk on it is that he doesn't have the ability to pay whatever amount. That's true. There is that risk. And as far as the disc of the initial appearance, my reading of Ms. McLinock's transcript that she prepared of that disc is that this case was handled just like every other petty offense. And today in our magistrate court in Sacramento, there are 154 service cases on calendar of this type and many other different types, anything from parking to, who knows, unlawful occupancy. I don't know what's on the calendar. But what happens is the defendants who actually do not forfeit collateral and come to court are given a quick opportunity to forfeit collateral or plead guilty and have collateral bail amount. And Mr. Anderson was given that opportunity. I'm not sure why. My office should have been seeking the restitution amount as far back as the initial appearance. And even on the citation, a collateral amount shouldn't have been set. There should have been a mandatory appearance because the government was seeking restitution. But in any event, once Mr. Anderson rejected that offer, then all bets were off. And when he went to trial, he was subject to anything up to the maximum penalty that could be imposed under the law. And that included a $5,000 fine on each of the three counts, no prison time because the government had agreed not to seek any incarceration on these cases, but then also the special assessment for each count and also restitution as appropriate under the law. Defense counsel has said that Mr. Anderson objected six separate times, both in the trial and in some other proceeding, which she didn't identify. I've read this transcript, the transcript of this case repeatedly, all aspects of it, both in preparation for my argument and preparing my brief in the district court and for here. And what I see is Mr. Anderson complaining about his ability to pay. I don't see him complaining about the accuracy of the Forest Service report or suggesting that he could come back with any kind of evidence showing that the work could be done more cheaply. He did offer to do the work himself and claimed that he could personally do it more cheaply, but the court rejected that when the government objected. And so other than claiming that he could do it himself more cheaply, there is no challenge to the validity of the report that was prepared by the Forest Service. I don't – I think that one of the things that's important to recognize is that Federal Rule of Criminal Procedure 58 sets forth the procedures that are to govern the handling of these petty offense cases. And, I mean, part of the reason that Congress delegates these matters to the magistrate judges to handle instead of having district courts take their time is so that they can be handled expeditiously and in the kind of volume that they come in and let the district judges deal with the felonies. Rule 58c3 says that in a case like this where there's no prison time to be imposed, the court must proceed immediately to sentencing after a conviction unless one of the parties asks for a continuance to take up some other matter. The local practice in the Eastern District, and as I understand it, throughout the country, the administrative office of the courts has indicated to probation departments, and they have then told their courts, that these petty offenses should not be clogging up the probation process in preparation of pre-sentence reports. That should be left for felonies and serious Class A misdemeanors, and that the courts should not, as a matter of routine, refer petty offenses to the – to the probation department. And in this situation, there was no request and no analysis of any need for probation to do a report, and I don't think it was necessary. Are you arguing for a volume exception to the notice requirements? No, I'm not suggesting that, Your Honor. Not at all. I think it would have been – it would have been ideal if the Forest Service officer who handled this case as the prosecutor had obtained the analysis of what it would cost to refill that hole and to return the hot springs area to its original condition in advance. But what's wrong in this expeditious proceeding from giving that estimate to the defendant at the beginning of it and saying, we're going to ask for restitution in this amount, and here, it takes some time to take a look at that. There's nothing wrong with that. I think it should have been done in advance. I think that that was error on the part of the prosecutor who handled the case. But once that error was made, the issue is, was it plain error, or at most, was it harmless error? And it was not. Judge Carlton can never be accused of rubber-stamping anybody's decision on anything, and he certainly didn't do that here. He analyzed the case very carefully, and he came to the conclusion that even if the defendant had notice in advance of the trial, there's no indication that anything would have happened any differently. And if he were to have vacated the judgment and raised the charge against the Well, what he could have done, Your Honor, is he could have said to Judge Hollows, this is the first time I'm ever seeing this, and I want to present my own evidence of what the what it would cost, or I think that this estimate is wrong, or I don't have any idea who this Forest Service person is, and I challenge their credentials to come up with this estimate. He didn't do any of those things. He said that three days, 24 hours, eight hours a day, three days, I think that's steep. He says he thinks it's steep. Yeah. In other words, he's not saying I'm just, I can't pay. He's saying I think this is a high estimate as a pro se person has been given the evidence on his feet and reacting to it. Okay. So I guess to get to Judge Reiner's question, he was deprived of the opportunity of contesting that and saying, okay, I'm going to get another estimate myself. I mean, it was not realistic for him to get an estimate then. I think that he didn't even, he didn't even suggest the possibility that he could get his own estimate or that this person should be brought to court and cross-examined. Instead, all he did was offer that he could do the work more cheaply for himself. Well, actually, the court brought that up. He didn't. I mean, he says, he starts by saying this is really steep, and the court says, Mr. Anderson, how about this? If you can get it done cheaper, you'll be on probation. I'll let you know. Yes. Okay. You're right. So it's not Mr. Anderson coming up and saying I can do it cheaper and the court rejecting it. It's the court coming up with the idea of him doing it cheaper. But even so, Judge Hollows had continued the matter to, for like 45 days, to February 16th from this January 5th trial. And during that time, Mr. Anderson could have done, could have gotten an estimate or could have talked to some of his people in the construction trade. He didn't do anything like that. He didn't come back to the court with that. And then when he had his attorney helping him on the appeal to Judge Carlton, he didn't present anything to the court showing that there were any problems with that estimate or giving an alternative estimate. And I think that's where we started with Judge Reimer's question. He still hasn't done that. He hasn't done that to this Court. I see that I'm out of time. Unless there are further questions, I would submit the matter. Thank you, counsel. Thank you. I want to spend 30 seconds on some of the factual assertions. One of the things that Judge Carlton, and all due respect to Judge Carlton, that he said was there was no way that Mr. Anderson could come up with anything. And he quoted to the portion of the record where Mr. Anderson said at the trial that he couldn't get photos or go up to the site because it snowed in. Well, the reality is, is the government provided photographs. They provided it to counsel for, on the direct appeal. That is something he could use. He's got photographs of what the site looked at near or about the time that it was damaged. So it's just not right to say there's nothing he could do. I find it, and I realize I do habeas and appeals almost exclusively, that we are charged with putting on extra record information to Judge Carlton. And that's not how a misdemeanor appeal is supposed to work. So I think it's an open question about what evidence he could present on. But the main point, and the thing that I found most disturbing, and I realize this is a, in the scheme of things, a piddly little case about restitution. But the most disturbing thing that I heard out of the government's mouth this morning is that this case was handled just like every other of the petty offense calendars at all or anywhere else in the United States. The reason that Rule 58 has these notice provisions is to tell people, particularly pro ses like Mr. Anderson, this is what you're up against. This is the maximum penalty, whether it's special assessment, whether it's imprisonment, whether it's a fine, whether it's restitution. And that is in the rule, and it's there for a purpose, and it should tell the Forest Service agent, whether they're masquerading as an attorney or not, that they need to give that information. They give it up at front. The comment about, you know, poor pitiful Forest Service agent, why should they know about what they're seeking in restitution? They don't need to make that decision at the initial appearance. What they need to be prepared to do is warn the defendant what he's facing. Mr. Anderson was not warned. He was harmed by that. And I think the proper remedy, if we don't settle it some other way, is that this Court should order that restitution be reduced to the amount that he was warned at the initial appearance, which is zero, or no greater. His total penalty should be no greater than the $750 that he heard from at the initial appearance. I know that my time is up. Thank you. The case just argued will be submitted. Next case on the calendar is United States v. Benally.
judges: Reinhardt, Rymer, Thomas